U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2026 AUG 31 A 11:58

CLERK
BY [signature] DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:25-cr-00117-1 |
| | ) | |
| MOHAMED MUBARAK, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, A NEW TRIAL**
(Doc. 92)

Pending before the court is Defendant Mohamed Mubarak's post-trial motion for judgment of acquittal or, in the alternative, a new trial. (Doc. 92.) Defendant was charged in a five-count Second Superseding Indictment with knowingly making a false statement or providing a misrepresented identification while acquiring a firearm (Counts One and Two); aggravated identity theft (Counts Three and Four); and being a felon in possession of a firearm (Count Five). On April 16, 2026, a jury convicted Defendant of all five Counts. Defendant moved for a directed verdict of acquittal at the close of the government's case-in-chief and renewed the motion at the close of all evidence. Both motions were denied.

Pursuant to Fed. R. Crim. P. 29(c), Defendant seeks a judgment of acquittal notwithstanding the verdict, arguing that the government's evidence at trial was insufficient to support his convictions. In the alternative, Defendant moves for a new trial under Fed. R. Crim. P. 33(a) on the same basis and on the grounds that the court erred in allowing the government's handwriting expert to testify. The government opposes the motion, contending sufficient evidence supports the jury's verdict and that the admission of limited testimony from a handwriting expert does not mandate a new trial. (Doc. 96.)

Defendant is represented by Kevin M. Henry, Esq. The government is represented by Assistant United States Attorneys Katherine H. Flynn and Michelle M. Arra.

## I. Factual and Procedural Background.

Prior to trial, Defendant filed a motion *in limine* to exclude or, in the alternative, limit the testimony of Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") Forensic Document Examiner Farrell Shiver. (Doc. 39.) Defendant argued that the government's disclosure failed to comply with Fed. R. Crim. P. 16; that handwriting analysis was insufficiently reliable under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals Inc.*, 509 U.S. 579 (1993); and that the testimony was unduly prejudicial under Fed. R. Evid. 403. The government filed a response in opposition, (Doc. 51), and the court heard initial arguments from the parties on April 6, 2026. The court noted deficiencies in the government's Rule 16 disclosure and accordingly limited the testimony of Mr. Shiver to the opinions and methodologies disclosed therein. The court deferred ruling on Defendant's other challenges to Mr. Shiver's testimony.

On April 13, 2026, following jury selection, the court held a *Daubert* hearing to address Mr. Shiver's qualifications and anticipated testimony. The court found that Mr. Shiver "qualified as a forensic examiner based on his education, experience, and training[] [and] his prior qualifications in federal, state, or local court." (Doc. 78 at 49:12-15.) It also found that courts in the Second Circuit routinely admit the testimony of handwriting experts. The court permitted Mr. Shiver to testify to his examination of the documents, the similarities he observed, and the opinions provided in the government's Rule 16 disclosure, but excluded any additional late-disclosed procedures or verifications.[1] The government agreed that Mr. Shiver would not testify that Defendant authored the documents in question. The court found that "whether or not [Defendant] actually is the author of the[] [exemplar] documents . . . is fodder for cross-examination." *Id.* at 52:8-10.

[1] Mr. Shiver was prohibited from testifying to a four-step methodology, standards in the field, that no person writes the same letter the same way every time, second-level verification of his opinions by another federal agency, the range of variation, the error rate in handwriting comparisons, the definition of "similarity," and the relative accuracy of handwriting comparisons made by forensic document examiners as compared with those made by laypeople.

After the first day of trial, Defendant moved to exclude as not sufficiently authenticated suspected samples of Defendant's handwriting from the Vermont Department of Motor Vehicles ("DMV") and the Vermont Department of Corrections ("DOC") (collectively, the "Comparison Documents"), which were used in Mr. Shiver's handwriting comparison. Following briefing and arguments by the parties, the court concluded that the documents were sufficiently authenticated because they contained information not known to the general public and not widely available and were the type of documents that are created without a motive to fabricate the information. *See* Fed. R. Evid. 901(b)(4). The court precluded the government from any representation to the jury that the Comparison Documents contained genuine signatures.

**II. The Evidence at Trial.**

Over the three-day trial of this case, the government called eleven witnesses and introduced twenty-eight exhibits into evidence. The parties stipulated that Defendant was convicted of a crime that was punishable by imprisonment for a term exceeding one year and that Defendant knew he had been convicted of this crime. Defendant did not testify or call any witnesses.

The government presented evidence of Facebook Messenger messages from late November and early December 2023 between Defendant and his childhood friend, Yesi Garelnabi, arranging for Mr. Garelnabi, who was not prohibited from purchasing or possessing firearms, to provide Defendant with his driver's license. Mr. Garelnabi testified that Defendant provided him with drugs in exchange for the use of his license.

Kylee Ward, Defendant's then girlfriend, testified that, around the same time, she and Defendant were interested in obtaining firearms and that Defendant eventually possessed a driver's license that he could use prior to January 2024. Defendant told her he was using Mr. Garelnabi's driver's license to purchase guns. She testified that she drove Defendant to retrieve Mr. Garelnabi's license. A photograph of Mr. Garelnabi's driver's license recovered from Ms. Ward's phone showed that it expired on January 8, 2024.

The government introduced an ATF Form 4473 for a Canik, TP-9SF Elite, 9-millimeter pistol (the "Canik") from Antiquities & Arms ("A&A") in Milton, Vermont, dated December 2, 2023. Michael Morgan, whose family owns A&A and who is a "responsible party" for A&A, explained that A&A is a federal firearms licensee ("FFL"), a business engaged in the sale and purchase of firearms, and has been so engaged for more than forty years. Throughout his testimony, he referred to A&A as a "firearms dealer," (Doc. 87 at 167:10), a "dealership," *id.* at 167:24, and a "licensed dealer." *Id.* at 172:18. He referred to A&A's license number, which was included on the Form 4473s. ATF Special Agent Samuel Brown also referred to A&A as an FFL during his testimony regarding his collection of the Form 4473s at issue in this case from A&A.

The buyer portion of the Canik Form 4473 was filled out in the name of Mr. Garelnabi, and a phone number associated with Ms. Ward was written on the back of the form. Mr. Morgan testified that it was A&A's practice to write the buyer's phone number on the back of the form because Vermont state law requires a three-day waiting period between the purchase and the transfer of a firearm. He stated that A&A's practice was to contact the buyer via the provided phone number when the sale of the firearm was approved. The sale of the Canik was completed on December 5, 2023.

The government also introduced a Form 4473 for a pink SCCY, DVG-1, 9-millimeter pistol (the "SCCY") from A&A dated December 8, 2023. The buyer portion of the SCCY Form 4473 was filled out in the name of Mr. Garelnabi, and Ms. Ward's phone number was written on the back of the form. On December 8, 2023, Defendant messaged Mr. Garelnabi, "Did you need the license today?[] I need it until like Wednesday. I just ordered this sh[*]t and [am] waiting to grab it." (Doc. 88 at 70:14-15.) On Wednesday, December 13, 2023, Ms. Ward messaged Defendant to inform him that "the guy called for the gun and said everything came back[,] so you can [go] get it[;] just call . . . him." (Doc. 87 at 94:8-10.) Ms. Ward testified that she sent this text because Defendant used her phone number to purchase the firearms. The sale of the SCCY was completed on December 13, 2023.

Mr. Garelnabi testified that he has never purchased a firearm, has never been to A&A or any firearm dealer, and did not fill out the Canik or SCCY Form 4473s. He pointed out that his name was misspelled on the SCCY Form 4473. At some point, he heard that Defendant had used his license to purchase firearms, and in March 2024, he messaged Defendant, "[Y]o[,] I hope you didn't purchase any guns under my name . . . when you took my ID that time, I just hope that wasn't the case." (Doc. 88 at 47:2-4.)

Mr. Shiver compared the handwriting on the buyer section of the Canik and SCCY Form 4473s to sample handwriting from Mr. Garelnabi and the Comparison Documents. He concluded that there was "strong support" that the buyer portions of the Canik and SCCY Form 4473s may not have been written by Mr. Garelnabi and "support" for the proposition that those portions may have been written by the same person who completed the Comparison Documents. *Id.* at 117:1, 117:12.

The government introduced a photograph of Defendant that Ms. Ward had taken inside her apartment on December 25, 2023. It depicted Defendant sitting on her child's play structure with three firearms. Ms. Ward identified the pink handgun in the photograph as the one Defendant purchased when she went to A&A with him. She identified a black firearm on his thigh as the other firearm he purchased.

ATF Firearms Enforcement Officer Jacob Phillips compared the SCCY purchased from A&A in December 2023 with the pink suspected firearm in the photograph and concluded that the two shared similar design features and characteristics. He conducted a similar comparison between the black suspected firearm in the December 25, 2023 photograph and an exemplar Canik firearm that was the same model as the one purchased from A&A in December 2023. ATF Officer Phillips opined that the suspected firearm in the photograph and the exemplar Canik shared very similar design features and characteristics. He stated that neither of the suspected firearms in the photograph were likely to be airsoft guns.

In March 2024, the South Burlington Police Department ("SBPD") responded to a firearms incident at Ms. Ward's apartment. Both Ms. Ward and Defendant were in her apartment when SBPD officers arrived. Defendant gave the SBPD officers a false name

and date of birth. When SBPD officers returned to Ms. Ward's apartment shortly thereafter, Defendant was no longer in the apartment. Ms. Ward testified that he left by jumping off a second-story balcony, which was consistent with footprints in the snow below Ms. Ward's balcony. During a consensual search of Ms. Ward's apartment, law enforcement found an empty gun box for the Canik pistol sold by A&A in December 2023 near the top of the kitchen trash can. Ms. Ward testified that Defendant threw the gun box, which had been in a closet in her bedroom, into the trash before he jumped off the balcony.

Julia Ciotti testified that, shortly after the incident at Ms. Ward's apartment, she saw Defendant with a pink handgun. She stated that Defendant had previously asked her to purchase a firearm for him and then report it stolen, which she did not do. Ms. Ciotti testified that Defendant also showed her Mr. Garelnabi's driver's license and told her that the person he had presented it to had not looked at it twice. The jury was able to observe that, although dissimilar in other ways, both Defendant and Mr. Garelnabi were young males with very dark complexions.

The SCCY was recovered by Essex Police Department during a firearms-related call in October 2024. The parties stipulated that both the Canik and the SCCY had traveled in interstate or foreign commerce.

## III. Conclusions of Law and Analysis.

### A. Whether Acquittal is Warranted.

"A defendant challenging the sufficiency of the evidence supporting a conviction faces a 'heavy burden.'" *United States v. Glenn*, 312 F.3d 58, 63 (2d Cir. 2002) (quoting *United States v. Matthews*, 20 F.3d 538, 548 (2d Cir. 1994)). The test for sufficiency of the evidence is "whether a rational jury could conclude beyond a reasonable doubt that a defendant is guilty of the crime charged." *United States v. Eppolito*, 543 F.3d 25, 45 (2d Cir. 2008), *cert. denied*, 555 U.S. 1148 (2009) (internal quotation marks omitted). It is permissible for a jury to have "base[d] its verdict entirely on inferences from circumstantial evidence, and the evidence need not have excluded every possible hypothesis of innocence." *United States v. Oguns*, 921 F.2d 442, 449 (2d Cir. 1990)

(citation and internal quotation marks omitted).

The court may not grant a motion for acquittal if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Under this demanding standard, "[a] court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted).

> In considering the sufficiency of the evidence presented at trial,
>
> the court must be careful to avoid usurping the role of the jury. . . . Rule 29(c) does not provide the trial court with an opportunity to substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury.

*United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) (internal quotation marks omitted) (second alteration in original). The court must "resolve all . . . issues of credibility in favor of the verdict." *United States v. Howard*, 214 F.3d 361, 363 (2d Cir. 2000), *cert. denied sub nom Henderson v. United States*, 531 U.S. 909 (2000).

### 1. Whether the Evidence at Trial Was Sufficient to Sustain the Jury's Verdict on Counts One Through Four.

Defendant argues that the evidence to convict him on Counts One and Two was insufficient to establish beyond a reasonable doubt that A&A was an FFL at the time of the sales and that it was Defendant who purchased the Canik and SCCY. For the same reasons, he claims there was insufficient evidence that he used Mr. Garelnabi's driver's license without lawful authority in order to convict him on Counts Three and Four.

For Counts One and Two, the government was required to prove the following beyond a reasonable doubt: (1) Defendant made a false or fictitious statement or provided a false, fictitious, or misrepresented identification while obtaining a firearm from an FFL; (2) Defendant knew the statement was false or fictitious or knew the identification was false, fictitious, or misrepresented; and (3) the statement or identification was intended to

or was likely to deceive about a material fact; i.e., one which would affect the legality of the transfer of the firearm from the FFL to the defendant.

For Counts Three and Four, the government was required to prove the following beyond a reasonable doubt: (1) Defendant knowingly used or possessed a means of identification of another person; (2) Defendant did so during and in relation to making a false statement or furnishing a misrepresented identification to an FFL in connection with the acquisition of a firearm (Counts One and Two); and (3) Defendant acted without lawful authority.

Defendant notes that federal firearms licenses are valid for three years, unless terminated sooner, and that if an FFL fails to timely file a license renewal application, the license expires. *See* 27 C.F.R. § 478.44-49. He contends that because the jury was not provided with a copy of A&A's license or application for a license and was not provided evidence of when the license was acquired, renewed, or expired, "the jury was not provided with any information to even infer that the license was valid and in effect at the time of the sales." (Doc. 92 at 7.) He concedes that the government is not required to produce the license. At trial, in his closing statement, Defendant raised the question of whether A&A's license existed and, if so, whether it had expired.

Defendant relies on *United States v. Reid*, in which the Fifth Circuit reversed a conviction, finding that, "at most, the Form 4473s . . . show that [the firearm dealers] held federal firearms licenses at one time[]" and did "not allow an inference that the dealers had valid licenses on the date of the sales." 595 F. App'x 280, 285 (5th Cir. 2014). The *Reid* court observed that an ATF agent "testified only that (1) FFLs are generally required to keep Form 4473s in the course of their business, and (2) certain dealers *other than* [the relevant dealers] were federally licensed." *Id.* at 284 (emphasis in original). It noted that the government "did not produce copies or originals of the dealers' licenses . . . [or] a license application with an expiration date, . . . [n]or did the [g]overnment call any employees from [the dealers] to testify that the dealers were federally licensed at the time of [the defendant's] offenses." *Id.* The Fifth Circuit nonetheless acknowledged it has "upheld a conviction . . . where the [g]overnment introduced no evidence on the licensing

requirement other than an ATF agent's testimony that he knew that the store in question was a[n] [FFL]." *Id.* at 283 (alteration adopted) (internal quotation marks and citation omitted).

In this case, in the light most favorable to the prosecution, a reasonable jury could conclude beyond a reasonable doubt that A&A was an FFL. Unlike *Reid*, the government did not merely produce the Canik and SCCY Form 4473s containing A&A's license number. Mr. Morgan also testified that he and his family have been operating A&A for over forty years and that it was an FFL for which he is a responsible person under the license. He spoke about the records an FFL is legally required to maintain. In addition, ATF Special Agent Brown identified A&A as an FFL when he testified about collecting the Canik and SCCY Form 4473s. A reasonable jury could find beyond a reasonable doubt that Mr. Morgan and Special Agent Brown were credible and conclude based on their testimony that A&A was an FFL at the time of the relevant sales.

Defendant also emphasizes that there is no direct evidence that he filled out the Canik and SCCY Form 4473s and purchased the firearms and contends that the vague testimony of the government's witnesses fails to provide a basis to find that fact beyond a reasonable doubt. "Direct evidence, however, is not constitutionally required to support a conviction. The law is well established that the government may secure conviction based solely on circumstantial evidence, provided it is sufficient to prove the elements of the charged crime beyond a reasonable doubt." *United States v. Abu-Jihaad*, 630 F.3d 102, 135 (2d Cir. 2010).

The government presented evidence that, in November and December 2023, Defendant and Ms. Ward discussed obtaining firearms, including the amount of money required for the purchase. Ms. Ward testified that she drove Defendant to a gun shop and that Defendant told her he had someone else's driver's license with which he could purchase firearms before the driver's license expired in January 2024. Mr. Garelnabi's driver's license expired on January 8, 2024. Ms. Ward messaged Defendant on December 13, 2023, that a firearm was ready to be picked up because he had provided her phone

number to A&A, consistent with A&A's practice to put the phone number of the buyer on the back of the Form 4473.

Mr. Garelnabi authenticated messages from November and December 2023 between himself and Defendant in which they discussed when and for how long Defendant could have Mr. Garelnabi's license, which the latter was willing to provide on a temporary basis in exchange for drugs. In December, Defendant asked to keep Mr. Garelnabi's license until the following Wednesday, which was December 13, 2023, the same day the SCCY sale was completed.

Mr. Garelnabi disavowed purchasing a firearm and visiting A&A. He denied writing the information on the Canik and SCCY Form 4473s and noted that his last name was misspelled on one of the forms.

Comparing the handwriting on the Canik and SCCY Form 4473s to handwriting samples from Mr. Garelnabi, Mr. Shiver concluded there was strong support that the buyer portions of the forms were not written by Mr. Garelnabi. Comparing them to the Comparison Documents, which contained personal and non-public information about Defendant, Mr. Shiver opined there was support that the person who wrote the comparison documents wrote the buyer portions of the Form 4473s. In providing his opinions, Mr. Shiver acknowledged that he had no knowledge of who authored any of the documents.

A photograph recovered from Ms. Ward's phone taken December 25, 2023, depicted Defendant holding a pink firearm and a black firearm, consistent with the firearms he purchased.

Ms. Ciotti testified that, shortly after March 2024, she saw Defendant with a pink handgun. She also testified that Defendant showed her Mr. Garelnabi's driver's license and told her that the last person he showed the license to had not looked twice at the person who presented it. It was her understanding that Defendant had used the driver's license to purchase a firearm. Mr. Garelnabi heard from a source that Defendant had used Mr. Garelnabi's driver's license to purchase a firearm, and he confronted Defendant about that. Defendant did not deny doing so.

Although Defendant may characterize the foregoing evidence as "vague," it included Defendant's admissions and eyewitness testimony as well as ample circumstantial evidence that Defendant obtained Mr. Garelnabi's driver's license and used it to purchase two firearms because he was prohibited from doing so himself. "[C]hoices between competing inferences lie solely within the province of the jury[,]" and the court must "'defer to the jury's resolution of the weight of the evidence[.]'" *United States v. Payne*, 591 F.3d 46, 60 (2d Cir. 2010), *cert. denied*, 562 U.S. 950 (2010) (quoting *United States v. Miller*, 116 F.3d 641, 676 (2d Cir. 1997), *cert. denied*, 524 U.S. 905 (1998)); *see also United States v. Ng Lap Seng*, 934 F.3d 110, 130 (2d Cir. 2019) ("[A] court cannot substitute its own judgment for that of the jury as to the weight of the evidence and the reasonable inferences to be drawn therefrom."). To the extent Defendant challenges the sufficiency of the evidence on the basis that Ms. Ward and Ms. Ciotti were not credible witnesses because they had previously lied to the government, those witnesses were the subject of vigorous cross-examination and "assessments of . . . the credibility of witnesses are for the jury and not grounds for reversal on appeal[.]" *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996).

Viewing the evidence collectively rather than in isolation, and in the light most favorable to the prosecution, a reasonable jury could conclude beyond a reasonable doubt that Defendant completed the buyer portions of the Canik and SCCY Form 4473s using Mr. Garelnabi's name, identity, and driver's license and purchased the Canik and SCCY from A&A because he was prohibited from purchasing them himself. As a result, Defendant's motion for judgment of acquittal on Counts One through Four is DENIED.

### 2. Whether the Evidence Was Sufficient to Sustain the Jury's Verdict on Count Five.

Defendant argues that the evidence to convict him on Count Five was insufficient because the government relied on a photograph purporting to show him in possession of firearms but did not establish that the suspected firearms in the photograph were firearms under federal law and were the ones purchased from A&A.

A "firearm" is any weapon that will or is designed to or may be readily converted to expel a projectile by the action of an explosive. The government presented evidence from ATF Officer Phillips providing a detailed comparison of the shared design features and characteristics between the suspected firearms in the photograph and the SCCY and an exemplar Canik. He also testified that neither of the suspected firearms in the photograph were likely to be airsoft guns, explaining the design differences between firearms and airsoft guns. In addition, the government offered testimony from Ms. Ward and Ms. Ciotti that they saw Defendant in possession of the SCCY.

Against this backdrop, Defendant has not met his "heavy burden" to show that the evidence at trial was insufficient. *Matthews*, 20 F.3d at 548. His motion for a judgment of acquittal on Count Five is therefore DENIED.

**B. Whether a New Trial is Warranted.**

Alternatively, Defendant moves for a new trial. Fed. R. Crim. P. 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." In deciding a Rule 33 motion, the court "must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). "The trial court must be satisfied that 'competent, satisfactory[,] and sufficient evidence' in the record supports the jury verdict." *Id.* (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). The court must also "strike a balance between weighing the evidence and credibility of witnesses and not wholly usurp[ing] the role of the jury." *Id.* at 133 (internal quotation marks omitted) (alteration in original). The court "generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility[.]" *Id.* "It is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." *Sanchez*, 969 F.2d at 1414.

Ultimately, the court must determine "whether letting a guilty verdict stand would be a manifest injustice[.]" *United States v. Aguiar*, 737 F.3d 251, 264 (2d Cir. 2013), *cert. denied*, 574 U.S. 959 (2014) (internal quotation marks omitted). While the court "has

broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29," the court "must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *Ferguson*, 246 F.3d at 134 (quoting *Sanchez*, 969 F.2d at 1414).

A new trial is reserved for those instances in which there is "a real concern that an innocent person may have been convicted." *Aguiar*, 737 F.3d at 264 (internal quotation marks omitted). Here, the government introduced overwhelming evidence to support the jury's verdict on all five Counts and to dispel any concern that the jury's verdict was the product of manifest injustice. This case thus lacks the "extraordinary circumstances" that would support the court usurping the jury's function. Because "'competent, satisfactory[,] and sufficient evidence' in the record supports the jury verdict[,]" *Ferguson*, 246 F.3d at 134 (quoting *Sanchez*, 969 F.2d at 1414), Defendant's request for a new trial for insufficient evidence is DENIED.

Defendant next argues that a new trial is warranted because Mr. Shiver's testimony was improperly admitted or insufficiently limited at trial. He contends that Mr. Shiver's testimony should have been precluded in its entirety because the government failed to properly disclose his opinions. The court agreed that there were deficiencies in the government's disclosure and limited Mr. Shiver's testimony accordingly. Rule 16 does not require the court to exclude Mr. Shiver's testimony in its entirety. *See* Fed. R. Crim. P. 16(d)(2) ("If a party fails to comply with this rule, the court may . . . prohibit that party from introducing the undisclosed evidence[] or . . . enter any other order that is just under the circumstances.").

Defendant asserts that Mr. Shiver's testimony should have also been precluded under Fed. R. Evid. 702 and *Daubert* as insufficiently reliable. He notes that Mr. Shiver could only approximate an error rate of one to three percent for handwriting analysis, provided no testimony about theories in the field subject to peer review, and provided no articulable standard for his conclusions. The government responds that Mr. Shiver described the "reasons and bas[e]s for [his] opinions" and has extensive experience as a

forensic document examiner and handwriting analyst, including testifying as an expert. (Doc. 96 at 21.)

The Second Circuit has not addressed the admissibility of handwriting experts. *See United States v. Adeyi*, 165 F. App'x 944, 945 (2d Cir. 2006) ("Our circuit has not authoritatively decided whether a handwriting expert may offer his opinion as to the authorship of a handwriting sample, based on a comparison with a known sample."). District courts in the Second Circuit have, however, admitted such testimony. *See, e.g.*, *United States v. Pitts*, 2018 WL 1116550, at *6 (E.D.N.Y. Feb. 26, 2018) (observing that courts in the Eastern District of New York "routinely admit handwriting evidence[]" and collecting cases); *Adeyi*, 165 F. App'x at 946 ("Because expert opinion as to handwriting authorship is not clearly inadmissible in this circuit, we cannot say the district court committed plain error[]" in allowing the expert's opinion.).

The approximated error rate of one to three percent was sufficient to satisfy *Daubert* standards. *See United States v. Chambers*, 2026 WL 1649134, at *7 (E.D.N.Y. June 8, 2026) (holding that a potential error rate of two percent was not "impermissibly high" and did not render the expert's analysis and testimony unreliable) (internal quotation marks omitted). In addition, Mr. Shiver has spent more than thirty-five years as a forensic document examiner; examined documents in more than 2,500 cases, of which approximately ninety percent involved handwriting examination; and testified as an expert in the field more than 150 times. "It is well settled that an expert witness may be qualified based merely on their experience[.]" *Noel v. City of New York*, 2023 WL 3170430, at *3 (S.D.N.Y. Apr. 28, 2023). Mr. Shiver was so qualified. At trial, Defendant chose not to challenge Mr. Shiver's qualifications but cross-examined him vigorously regarding his analysis of the documents and the limitations of his opinions.

Defendant argues that even if Mr. Shiver's testimony was reliable, the court should not have allowed him to offer his opinion that the same person may have authored the Canik and SCCY Form 4473s and the Comparison Documents because it was unfairly prejudicial. The authorities cited by Defendant in support of this contention, however, prohibit an expert from opining that a *specific* person wrote a document. *See, e.g.*, *United*

*States v. Hines*, 55 F. Supp. 2d 62, 69 (D. Mass. 1999) (prohibiting an expert from opining that defendant authored a note because "[t]here is no data that suggests that handwriting analysts can say, like DNA experts, that this person is 'the' author of the document[]"); *United States v. Van Wyk*, 83 F. Supp. 2d 515, 523-24 (D.N.J. 2000) (permitting expert to opine on comparisons between the handwriting in documents but prohibiting him from testifying as to the identity of the author); *United States v. Oskowitz*, 294 F. Supp. 2d 379, 384 (E.D.N.Y. 2003) ("The expert may not, however, give the opinion that a handwriting sample was written by a particular person[.]"). In this case, Mr. Shiver did not testify that Defendant was the author of the Canik and SCCY Form 4473s or the author of the Comparison Documents. His testimony was limited to noting the similarities and differences between the handwriting on the documents and that, because of these similarities, the same person *may* have authored them. Because he did not opine regarding the particular author of any of the writings, his opinion was not unfairly prejudicial.

Finally, Defendant claims that Mr. Shiver's testimony regarding the Comparison Documents should have been excluded because the Comparison Documents were not sufficiently authenticated. "Evidence may be admitted on a showing 'sufficient to support a finding that the item is what the proponent claims it is.'" *United States v. Encarnacion-Lafontaine*, 639 F. App'x 710, 713 (2d Cir. 2016) (citing Fed. R. Evid. 901). "The ultimate determination as to whether the evidence is, in fact, what its proponent claims is thereafter a matter for the jury." *Id.* (citing *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014) (internal quotation marks omitted)). "The type and quantum of evidence" required for authentication "depends upon a context-specific determination whether the proof advanced is sufficient to support a finding that the item in question is what its proponent claims it to be[,]" but the bar "is not particularly high." *Vayner*, 769 F.3d at 130 (citing *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007) (internal quotation marks omitted)).

The Second Circuit has observed "that the contents or 'distinctive characteristics' of a document can sometimes alone provide circumstantial evidence sufficient for

authentication[,]" *id.* at 132 (quoting Fed. R. Evid. 901(b)), recognizing that "a writing may be authenticated by evidence 'that the contents of the writing were not a matter of common knowledge.'" *Id.* (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 957 (2d Cir. 1990)).

In the instant case, the Comparison Documents contained Defendant's social security number and inmate identification number, information that was not "common knowledge[,]" *Maldonado-Rivera*, 922 F.2d at 957, unlike a person's "name, photograph, and some details about his [or her] life[.]" *Vayner*, 769 F.3d at 132. They are also the type of documents usually filled out by the person identified therein. *See United States v. Mangan*, 575 F.2d 32, 41 (2d Cir. 1978) (upholding admission of handwriting exemplar documents from defendant's personnel file because they "were of the sort that normally would be filled out by the employee"). It was therefore a jury question as to whether the Comparison Documents were authentic. *See In re NTP, Inc.*, 654 F.3d 1279, 1295 (Fed. Cir. 2011) ("[T]he authenticity of a document is a question of fact."); *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 239 (5th Cir. 2016) (same); *United States v. Vidacak*, 553 F.3d 344, 349 (4th Cir. 2009) (same).

Defendant's citation to *United States v. Wagner*, 475 F.2d 121 (10th Cir. 1973), does not alter this conclusion. In *Wagner*, the Tenth Circuit reversed and remanded for a new trial because the district court allowed an expert to opine, based on his comparison of an endorsed check and public records, that the questioned signature was the defendant's signature. The *Wagner* court held that the expert's opinion lacked foundation because the signatures had not been authenticated. Here, however, Mr. Shiver opined only that the same person may have authored the Canik and SCCY Form 4473s and the Comparison Documents, not that Defendant did.

In any event, Mr. Shiver's testimony was only one of many pieces of evidence presented at trial. A reasonable jury could have found Defendant guilty beyond a reasonable doubt without relying on Mr. Shiver's testimony. Mr. Garelnabi's testimony that he did not author the Canik and SCCY Form 4473s would have, alone, sufficed to constitute proof beyond a reasonable doubt if the jury found him credible. That testimony

was corroborated by Defendant's own text messages and a photograph purporting to show Defendant with the purchased firearms. The admission of Mr. Shiver's testimony therefore does not rise to a "manifest injustice" requiring this court to grant a new trial. *Aguiar*, 737 F.3d at 264 (internal quotation marks omitted).

## CONCLUSION

For the foregoing reasons, Defendant's motion for a judgment of acquittal or, in the alternative, a new trial is DENIED. (Doc. 92.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 31st day of August, 2026.

Christina Reiss, Chief Judge
United States District Court